**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**CYNTHIA JETT,**

       **Plaintiff**

    **v.**                         **Case No. 1:11-cv-586-HJW**

**AMERICAN NATIONAL RED CROSS,**

       **Defendant**

**ORDER**

    In three separate motions, the defendant moves for judgment on the pleadings, for summary judgment, and to strike plaintiff's demands for punitive and compensatory damages and for jury trial (doc. nos. 43-35). Plaintiff opposes all three motions. For the two dispositive motions, National has submitted proposed findings of fact and conclusions of law (doc. nos. 43-5, 45-17), which plaintiff has highlighted as true, false, or irrelevant (doc. nos. 49-12, 61).[1] Having fully considered the record, including the pleadings, briefs, exhibits, proposed findings, and applicable authority, the Court will <u>grant</u> the motion for summary judgment, and <u>deny</u> the other two motions, for the following reasons:

**I. Background**

    Plaintiff was employed in Ohio as an administrative assistant by the Cincinnati Area Chapter of the American Red Cross. She worked there for over 30

---

**1 The Court's "Scheduling Order" (doc. no. 9) requires the proponent of a dispositive motion to file proposed findings in support. The opposing party must then file its high-lighted version within 23 days. The purpose of the highlighting is to identify any disputed issues of fact and law. Plaintiff did not file one of her highlighted versions within 23 days (see doc. no. 61, filed March 4, 2014). In this instance, and in the interest of justice, the Court will consider the late document.**

years. In 2008-2009, the American National Red Cross ("National") and the Cincinnati Chapter ("Chapter") experienced financial difficulties, including a substantial budget deficit and underfunding of pension obligations. After considering various alternatives for nearly a year, Chapter implemented a reduction in force ("RIF"). On August 16, 2010, Chapter discharged plaintiff (age 50) and two other employees (ages 39 and 43) (doc. no. 49-12, ¶ 3). Chapter merged several positions into one and added some new duties. This "merged" position was subsequently posted on the website Careerbuilder.com. Plaintiff applied for the job, but did not receive an interview.

On December 23, 2010, plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). She listed her employer as the "American Red Cross," but listed the address of the Cincinnati Chapter (doc. no. 43-3, EEOC Charge). She specifically elected not to have her charge dual-filed with the Ohio Civil Rights Commission ("OCRC").[2] The EEOC mailed her a "Dismissal and Notice of Suit Rights" on May 23, 2011 (doc. no. 6-2 at 33-34).

On August 12, 2011, plaintiff filed a three-count federal complaint, alleging that National had: 1) discriminated against her on the basis of age in violation of the Kentucky Civil Rights Act ("KCRA"), at K.R.S. § 344.040 and 344.280 (doc. no. 1, ¶¶ 62-65); 2) violated the Age Discrimination in Employment Act ("ADEA") by implementing a RIF that allegedly had a discriminatory impact on older employees and by terminating employees (including plaintiff) who met "the Rule of 60" or

---

2 Although Jett highlights this as "disputed" (doc. no. 49-12, ¶ 3), she expressly indicated on the face of her EEOC charge that she did __not__ want it referred to the OCRC (doc. no. 43-3, EEOC Charge).

stood to accrue continued retirement benefits (¶¶ 56-61); and 3) terminated her employment in the RIF, thereby interfering with her retirement benefits in violation of the Employee Retirement Income Securities Act of 1974, § 510 ("ERISA"), 29 U.S.C. § 1140 (¶¶ 40-55). After filing her federal action, plaintiff filed a state charge with the OCRC on November 8, 2011, alleging age discrimination based on the same facts as her prior EEOC charge.[3]

National filed a Rule12(b)(6) motion to dismiss, contending that the Chapter was a separate entity and that Chapter, rather than National, was the plaintiff's employer. In their briefs, plaintiff and defendant both cited summary judgment case law and argued the "prima facie case" under the burden-shifting evidentiary framework for summary judgment. The Court found such arguments to be "premature" and denied the motion without prejudice. The parties then conducted discovery. Upon the conclusion of discovery, defendant filed a Rule 12(c) motion for judgment on the pleadings, reasserting only that the ADEA and ERISA claims are time-barred. Defendant also filed a motion for summary judgment and a motion to strike the plaintiff's request for punitive and compensatory damages and for jury trial. These motions are fully briefed and ripe for consideration.

## II. Standard of Review for Rule 56(c) Motions

Pursuant to Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party

---

3 Although plaintiff highlights this as "disputed" (doc. no. 49-12, ¶ 4), the record reflects that she filed an OCRC charge on such date. She offers no explanation for "disputing" this.

bears the burden of proving that no genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e., disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id. at 248. A mere scintilla of evidence in support of a party's claim is insufficient to survive summary judgment, as there must be enough evidence that a jury could reasonably find for the party. Id. at 251. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." Id.

III. Analysis

A. Plaintiff's KCRA Claim Fails as a Matter of Law

Although plaintiff brings a claim under the Kentucky Civil Rights Acts ("KCRA"), she does not allege that any relevant actions took place in Kentucky. In fact, it is undisputed that the events at issue all occurred in Ohio. Jett acknowledges that she worked in Ohio for the Cincinnati Chapter of the Red Cross (Jett Dep. at 17). It is undisputed that she was employed in Ohio when she was dismissed as part of the RIF, which was implemented by the Cincinnati Chapter of the Red Cross.

Defendant correctly points out that the KCRA does not have "extraterritorial application" to events in other states (doc. no. 45-1 at 5). See Union Underwear Co., Inc. v. Barnhart, 50 S.W.3d 188, 193 (Ky. 2001) (observing that, as expressly stated in KRS 344.020(1)(a), the KCRA was enacted to "provide for execution *within the state* of the policies embodied in [federal civil rights laws]") (italic added). Under the facts of this case, allowing Jett to seek relief under the KCRA would be an impermissible extraterritorial application of the KCRA. See Ferrer v. MedaSTAT USA, LLC, 145 Fed.Appx. 116, 117 (6th Cir. 2005) (affirming dismissal of extraterritorial claim and observing that the KCRA did not provide plaintiff with a remedy for alleged retaliation she suffered in other states).

In sum, plaintiff's claim under the KCRA must be dismissed because, under the undisputed facts of this case, the KCRA does not apply to employment actions that occurred outside of Kentucky. Plaintiff does not discuss this issue in her response, and in her highlighted version of the proposed findings, she appropriately concedes this issue (doc. no. 61 at 4, ¶ 1).

B. Plaintiff's Age Discrimination Claim under the ADEA

Next, National moves for summary judgment on plaintiff's ADEA claim. The ADEA prohibits an employer from discharging an individual 'because of such individual's age." 29 U.S.C. § 623(a)(1). The United States Supreme Court has explained that with both direct and circumstantial evidence, the burden of persuasion remains on the plaintiff to show "that age was the 'but for' cause of their employer's adverse action." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 177 (2009).

Plaintiff has not pointed to direct evidence of age discrimination. She acknowledged at deposition that none of the seven individuals involved in the Chapter's decision-making process (Peller, Drefahl, Price, McIntosh, Redman-Rengstorf, Hakes, and Fink) had made any derogatory age-based comments or acted with discriminatory intent (Jett Dep. at 136-139). National points out that all seven individuals were in the same age group as Jett, and in fact, all but one were older than Jett (doc. no. 45-1 at 11-12).

Although plaintiff attempts to attribute discriminatory intent to an isolated comment by HR Director Christine Stroup that she "was going to use more technology savvy people," this comment would require multiple inferences to be interpreted as plaintiff urges. By definition, direct evidence is "evidence that proves the existence of a fact without requiring any inferences." Grizell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006) (quoting Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004)). Ms. Stroup's comment makes no reference to age and is not "direct" evidence of age-based discrimination.

Moreover, plaintiff acknowledges that Ms. Stroup was *not* a member of the executive group that made the employment decision at issue here (Jett Dep. at 157, indicating that Stroup was merely the HR person who told plaintiff that her employment was being terminated in the RIF). Generally, "any discriminatory statements must come from decisionmakers to constitute evidence of discrimination." <u>Geiger v. Tower Automotive</u>, 579 F.3d 614, 620-21 (6th Cir. 2009); <u>Minadeo v. ICI Paints</u>, 398 F.3d 751, 764 (6th Cir. 2005) (finding that an isolated comment by a non-decisionmaker in HR was not direct evidence of age discrimination). National points out that inferring discriminatory intent from this innocuous comment would be "unreasonable." National correctly asserts that the Court is not required to draw "unreasonable" inferences from the evidence, particularly since plaintiff herself indicated at deposition that she did not believe that Ms. Stroup had discriminated against her (Jett Dep. at 157, Q: Do you believe Christine Stroup discriminated against you on the basis of age? A: No.).

Plaintiff selectively quotes from the Chapter's "Strategic Directions and Goals" and urges the Court to ascribe out-of-context meaning to a generalized reference to "young adults" as if it were evidence of age discrimination (see doc. no. 49 at 3 citing doc. no. 38-7 at 2). On the contrary, the Chapter's stated goal in 2010 of broadening "college campus engagement through development of community service and fund-raising projects" and increasing "overall volunteer and paid staff workforce that is representative of the community" is hardly evidence of any sort of discrimination. Such statements are benign and cannot reasonably be construed as direct evidence of discriminatory motivation.

Absent direct evidence, a plaintiff must proceed with indirect evidence under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of age discrimination, Jett must show that (1) she is a member of "a protected group; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the circumstances support an inference of discrimination. Blizzard v. Marion Tech. Coll., 698 F.3d 275, 283 (6th Cir. 2012), cert. denied, 133 S.Ct. 2359 (2013). "Where, as here, a discrimination claim is based on termination arising out of a work force reduction, this court has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.' " Rachells v. Cingular Wireless Employee Services, LLC, 732 F.3d 652, 661 (6th Cir. 2013) (quoting Geiger, 579 F.3d at 622). "The purpose of the additional evidence requirement is to ensure, in reduction of force cases, that the plaintiff has presented evidence to show that there is a chance the reduction in force is not the reason for the termination." Asmo v. Keane, Inc., 471 F.3d 588, 593 (6th Cir. 2006). It is undisputed that the plaintiff was over forty and discharged in a RIF.

National asserts that plaintiff cannot establish the second and fourth steps. At the second step, National points out that several positions, including plaintiff's, were eliminated at the Chapter level. Subsequently, a "merged" position was advertised that combined the duties of several positions and added some new duties. To the extent plaintiff complains that she was not hired for this

Page 8 of 18

"merged" position, National points out that Jett was not "qualified" for it because it required the employee to be available to serve on national disaster assignments. Plaintiff admittedly was not available to serve on such assignments and freely admits she had no desire to do so (Jett Dep., Ex. 3 at 53-54, 58). National points out that the person eventually hired for the merged position (Ms. Erin Reinhart) was better qualified (i.e. she had a law degree and was more skilled in the required use of technology) and was immediately able to serve on national disaster assignments (doc. no. 45-1 at 9, fn. 6, citing Reinhart Decl., Ex. 14 at ¶ 3).

National also asserts that plaintiff has also failed to make a prima facie case at the fourth step. Plaintiff has not shown that she was "replaced" by someone substantially younger or "treated differently" than any similarly situated, nonprotected employees. National points out that plaintiff acknowledges that her job was eliminated, that some of the reporting duties of several jobs (including hers) overlapped, and that her former duties were combined with another position (Jett Dep. at 127-28, indicating that the merged position was "a combination of both of our jobs" and included some "new duties"). The Sixth Circuit has held that when two positions are consolidated into one position, this "clearly does not meet the definition of replacement." Wilson v. State of Ohio, Dep't of Job & Family Servs., 178 Fed. Appx. 457, 465 (6th Cir. 2006); Geiger, 579 F.3d at 623 (same). One important purpose of a RIF is to eliminate excess worker capacity and redundant duties during periods of financial difficulty, such as the national recession in 2008-2009.

To the extent plaintiff suggests she was "treated differently" than similarly

situated, nonprotected employees because Director Hakes had not invited her to lunch for her birthday, National aptly points out that Jett's own testimony establishes that he did so for reasons unrelated to Jett's age (doc. no. 45-1 at 13, citing Jett Dep. at 81-82, indicating "he did not spend a lot of time in our area and he did not get to know us. And I think a lot of that was because of the situation between him and [the deputy director]."). Plaintiff has not shown that this trivial matter had any connection with her age. She also has not shown that she was "similarly-situated" to the employees in the other "area" who worked under a different supervisor. "[T]he individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352-53 (6th Cir. 1998) (explaining that a plaintiff need not show an "exact correlation," but that the comparators must be "similar in all of the relevant aspects"). National correctly points out that vague allegations of preferential treatment without any demonstrated connection to age are not probative of discrimination.

Although plaintiff complains that other employees were later rehired and she was not, this by itself is not evidence of age discrimination. With respect to the alleged failure to re-hire plaintiff for the merged position, plaintiff has not shown that she possessed qualifications superior to those of Ms. Rhinehart, the person eventually hired for the merged position. See Rachells, 732 F.3d at 663-64

("in the age discrimination context. . . a plaintiff could establish a prima facie case by showing that . . . she possessed qualifications superior to those of a younger co-worker working in the same position") (quoting <u>Schoonmaker v. Spartan Graphics Leasing, LLC</u>, 595 F.3d 261, 267 (6th Cir. 2010)).

As part of her prima facie case, and given that plaintiff's employment termination occurred as part of a work force reduction ("RIF"), she must provide additional evidence tending to indicate that the employer singled her out for discharge for discriminatory reasons. Plaintiff has not done so.

Even assuming that plaintiff had made out a prima facie case, National has articulated legitimate non-discriminatory reasons for terminating plaintiff's employment, i.e., the Cincinnati Chapter's demonstrated need to reduce its budget and streamline its workforce and operations.

After an employer articulates legitimate nondiscriminatory reasons for terminating a plaintiff's employment, the burden shifts back to the employee to point to evidence that the stated reasons were merely a pretext for discrimination. Plaintiff must produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." <u>Chen v. Dow Chem. Co</u>., 580 F.3d 394, 400 (6th Cir. 2009). An employee may do this by showing that the proffered reasons (1) had no basis in fact, (2) did not actually motivate her discharge, or (3) were insufficient to motivate discharge. <u>Blizzard</u>, 698 F.3d at 285; <u>Chattman v. Toho Tenax Am., Inc</u>., 686 F.3d 339, 349 (6th Cir. 2012). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" <u>Chen</u>, 580 F.3d at 400 n. 4.

National points out that the Cincinnati Chapter of the Red Cross eliminated Jett's position and then merged its duties with another position for legitimate business purposes (i.e., cost savings and more efficient operations). It is undisputed that the Chapter faced a substantial projected budget deficit of approximately $400,000 and needed to reduce operating expenses for fiscal year 2011 (Jett Dep. at 144; see also, doc. no. 45-1 at 14, citing Business Justification, Ex. 1; 6/25/2010 Board Minutes, Ex. 4; 4/2010 through 8/2010 E.G. Notes, Ex. 5). National points out that the Chapter's decision to combine the positions is well-documented and was under consideration for more than a year before Jett's discharge. Plaintiff cannot avoid summary judgment merely by disagreeing with the Chapter's legitimate business decision to consolidate several redundant positions with overlapping duties. See Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285-86 (6th Cir. 2012) (the pertinent issue is whether the employer made an honest, informed business judgment, not whether that business judgment was correct or ideal). In fact, National points out that the new employee hired for the merged position (Ms. Rhinehart, age 32) took initiative to organize the reporting functions and was able to perform the duties of that merged position while working only 20 hours per week.

National asserts that Chapter did not hire Jett for the new "merged" position for legitimate, performance-based reasons (i.e. her lack of relevant technological skills, and concerns about her lackluster job performance, lack of initiative, and interpersonal conflicts). It is undisputed that Chapter was not satisfied with Jett's job performance. Ms. Juhi Lee, Jett's former supervisor,

objectively criticized Jett's job performance in her 2009 performance review. Plaintiff admits that Director Hakes was not satisfied with her job performance and interpersonal skills (Jett Dep. at 81, 145). Others in the decision-making process (Fink and Price) agreed that Jett should not be considered for the merged position for those same performance-related reasons (Fink Dep. at 80-81; 3/29/2010 E.G. Notes, Ex. 15; Price Decl., Ex. 3 at ¶ 13; 2009 Performance Review, Ex. 9; Jett Dep. at 88, 93, 97). Although plaintiff points to some favorable letters regarding her past job performance, those letters are from a much earlier time period, i.e. 15 to 20 years ago, and do not reflect her more recent job performance.

Plaintiff has not shown that Chapter's decision to eliminate her administrative position as part of a RIF was merely a pretext for age discrimination. Given that plaintiff's supervisors were not satisfied with her more recent job performance, plaintiff has also not shown that the Chapter's decision to hire someone else for the merged position was pretextual. It is undisputed that Ms. Rhinehart had better qualifications for the merged position. Defendant is entitled so summary judgment on the ADEA claim.

## D. ERISA "Interference with Benefits" Claim

Finally, National moves for summary judgment on plaintiff's claim that her employment was terminated in order to "interfere" with her ERISA benefits. Section 510 of ERISA makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may

become entitled under an employee benefit plan." 29 U.S.C. § 1140. Employers may adopt, modify or terminate pension benefit plans. Coomer v. Bethesda Hosp. Inc., 370 F.3d 499, 508 (6th Cir. 2004). They may not, however, discharge or harass employees in order to prevent them from obtaining vested pension rights or to circumvent the provision of promised benefits. Inter Modal Rail Emp. Ass'n v. Atchison, Topeka & Santa Fe Ry., 520 U.S. 510, 515 (1997); Crawford v. TRW Automotive U.S. LLC, 560 F.3d 607, 612 (6th Cir. 2009), cert. denied, 558 U.S. 1137 (2010) ("an employer may only discharge employees when neutral, non-pension right-interfering concerns animate the decision"); Ensley v. Ford Motor Co., 368 Fed.Appx. 658, 660 (6th Cir. 2010).

In the ERISA § 510 context, the burden-shifting framework requires a plaintiff to establish a prima facie case by pointing to evidence of: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Clark v. Walgreen Co., 424 Fed.Appx. 467, 474 (6th Cir. 2011) (quoting Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992)). Plaintiff must point to evidence of a causal connection between her discharge and the reduction in pension benefits. Pennington v. Western Atlas, Inc., 202 F.3d 902, 906 (6th Cir.), cert. denied, 531 U.S. 826 (2000). Plaintiff must point to sufficient evidence to create a rebuttable presumption so that the burden shifts to the employer to produce evidence supporting a legitimate, non-discriminatory reason for the discharge Crawford, 560 F.3d at 613-14. The employer's alleged nondiscriminatory reason for taking an adverse employment action may not be considered when analyzing the prima

facie case. <u>Wexler</u>, 317 F.3d at 574.

Jett has not pointed to evidence that Chapter discharged her specifically in order to interfere with her attainment of ERISA-protected benefits. It is undisputed that Chapter and National both were facing budget deficits and needed to reduce costs. These budgetary pressures that led to implementation of a RIF. Plaintiff's contention that some other method of cost-savings should have been utilized is unavailing. Chapter's decision to merge several redundant positions based on a need to reduce operating expenses is not "direct" evidence of a prohibited discriminatory motive under ERISA. "Proof of specific intent is required to establish an ERISA § 510 violation because the loss of benefits is incidental to every termination." <u>Williams v. United Steel Workers of Am.</u>, 2010 WL 909883, *7 (S.D.Ohio) (J. DLott), affirmed by 487 Fed.Appx. 272 (6th Cir. 2012) (citing <u>Majewski v. Automatic Data Proc., Inc.</u>, 274 F.3d 1106, 1113 (6th Cir. 2001)).

Although plaintiff argues that the Red Cross wanted to save money on pension and benefit costs, the Sixth Circuit Court of Appeals has explained that "[i]t is obvious that benefit costs make up a large amount of the costs of an employee to a company, and that pension rights are a substantial component of benefit costs, but these undeniable propositions are not sufficient standing alone to prove the requisite intent." <u>Humphreys</u>, 966 F.2d at 1044. See also, <u>Williams</u>, 2010 WL 909883, at *7 (dismissing ERISA claim and observing that the court "cannot infer specific intent to violate ERISA from the mere fact that a plaintiff's termination lessened his amount of future benefits").

Although plaintiff points to evidence reflecting that Chapter was attempting

to reduce its budget deficit and streamline operations by using personnel in a more efficient manner, she has not pointed to evidence that the Red Cross (whether National or Chapter) impermissibly targeted employee benefits specifically for interference. See Crawford, 560 F.3d at 615 ("the facts of these cases will always be myriad and complicated, and plaintiffs must show that the employer, in the midst of all this, in some way targeted certain employee benefits or rights for interference"); Petrus v. Lucent Tech., Inc., 102 Fed. Appx. 969, 971 (6th Cir. 2004) (observing that  employee's loss of pension benefits was a mere consequence of, and did not motivate, supervisor's decision to place employee with company division that was later sold).

National points out that "none of the documents or testimony relating to the Chapter's decision to merge positions suggest that the Chapter purposefully targeted certain employee benefits for interference" (doc. no. 45-1 at 18). See, e.g., Turner v. Humana, Inc., 901 F.Supp.2d 1035, 1043 (S.D.Ohio 2012) (J. Spiegal) ("Plaintiffs simply have not adduced any evidence—whether direct or circumstantial—that the use of their medical benefits was a motivating factor in defendant's decision to terminate [plaintiff's] employment").

Plaintiff cannot establish a prima facie case based merely on temporal proximity between the date of her discharge and the date on which the benefits at issue would have vested. In fact, she admitted at deposition that any such pension benefits would not have vested until approximately *ten years* after her discharge in the RIF (Jett Dep. at 142-143, indicating that she would not have been eligible to retire until age 60). See, e.g., Petrus, 102 Fed. Appx. at 971

(finding that two-year gap between termination and vesting of benefits was insufficient); <u>Cupp v. Fluor Fernald, Inc</u>., 2006 WL 462446, *9 (S.D.Ohio) (finding that "a gap of three years . . . is too great to be the basis of a prima facie case"). The evidence relied on by plaintiff fails to create any genuine dispute of material fact for this claim.

Plaintiff has also not pointed to evidence that her employer's stated budgetary reasons for her termination were "pretextual." Defendant points out that plaintiff cannot defeat summary judgment merely by disagreeing with the Chapter's decision to eliminate certain positions in order to balance its budget. Her contention that the Chapter should have reduced expenses in some other way in unavailing. See <u>Hedrick</u>, 355 F.3d at 462 (emphasizing that "it is inappropriate for the judiciary to substitute its judgment for that of management."); <u>Crawford</u>, 560 F.3d at 614 (finding no pretext shown and affirming summary judgment for employer because "[m]easures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent").

Although Jett alleges that the Red Cross targeted "Rule of 60" employees for discharge (i.e., employees entitled to certain benefits in the Retirement System due to a combination of age and years of service), National points out that Chapter's obligations to contribute to the Retirement System were the exact same for "Rule of 60" employees as they were for employees in the Retirement System who did not qualify for the "Rule of 60" (Price Decl., Ex. 3 at ¶¶ 20-21). National asserts that, contrary to plaintiff's personal belief, Chapter had no

**Page** 17 **of** 18

financial incentive to target alleged "Rule of 60" employees in the RIF. To the extent plaintiff contends that National directed Chapter to do so, she acknowledges she has no evidence that National was involved in the decision-making process in the implementation of the Chapter's RIF (Jett Dep. at 151).

 IV. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant a request for oral argument. The parties have fully briefed the relevant issues and have not requested oral argument. The Court finds that oral argument is not necessary. Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992); Himes v. U.S., 645 F.3d 771, 783-84 (6th Cir. 2011) (collecting cases); Schentur v. U.S., 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendant's "Motion for Summary Judgment" (doc. no. 45) is GRANTED; the "Motion for Judgment on the Pleadings" (doc. no. 43) and the "Motion to Strike Punitive and Compensatory Damages and Jury Demand" (doc. no. 44) are DENIED as moot. This case is hereby DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court